# Exhibit A

SUFFOLK, ss.

# Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. _____10-3243___BLS_____

_____CARL CHUDNOFSKY_____, Plaintiff(s)

v.

_____PRIME RETAIL LP ET ALS_____, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

PRIME RETAIL, L.P.; LEE OUTLETS, LLC; PRIME OUTLETS ACQUISITION COMPANY, LLC; PFP VENTURE, LLC; DAVID LICHTENSTEIN; ROBERT A. BRVENIK; and PEYTON OWENS,
Defendants,

and

LEE OUTLETS, LLC; PRIME OUTLETS ACQUISITION COMPANY, LLC; and PFP VENTURE, LLC,
Reach-and-Apply Defendants.

You are hereby summoned an plaintiff's attorney, whose address an answer to the complaint which i upon you, exclusive of the day of you for the relief demanded in the the office of the Clerk of this court able time thereafter.

e of this summons
l be taken against
o the complaint in
or within a reason-

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, RE attachment for a preliminary injunction and that a hearing upon such application will be held at the court house at said Ctrm 1309 Boston of our said court on ____Thursday_____ the _nineteenth_ day of __August__ A.D. 20_10_, at ___two_ o'clock P.M., at which time you may appear and show cause why such application should not be granted.

BARBARA J ROUSE
Witness, ~~Suzanne V. DelVecchio~~ Esquire, at Boston, the _____sixyeenth_____ day of _____August_____, in the year of our Lord two thousand ____sixteenth____

_____
Assistant     Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

**SUFFOLK, ss.**    # Commonwealth of Massachusetts



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No.___10-3243___BLS___

CARL CHUDNOFSKY _____, Plaintiff(s)

v.

PRIME RETAIL LP ET ALS _____, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon   Sassoon & Cymrot LLP
plaintiff's attorney, whose address is   84 State St Boston Mass 02109 ,
an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WE ALSO NOTIFY YOU that application has been made in said action, as appears in the complaint, RE attachment
for a preliminary injunction and that a hearing upon such application will be held at the court house at said    Ctrm 1309
Boston of our said court on_____Thursday_____the_nineteenth_
day of___August___A.D. 2000_0_, at _____two_____ o'clock P.A.M., at which time you may appear and show cause why such application should not be granted.

Witness, ~~Suzanne V. DelVecchio~~ BARBARA J ROUSE Esquire, at Boston, the___sixteenth_____ day of
_____August_____, in the year of our Lord two thousand ___sixteenth___.

_____
Assistant    Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM CIV. P. 2 5M 10/2000

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200____, I served a copy of the within summons and order of notice, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____, . 200____.        _____

**N.B.   TO PROCESS SERVER:—**
PLEASE PLACE **DATE** YOU MAKE SERVICE ON DEFENDANT IN
THIS BOX **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| |
|---|
| , 200   . |

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _____

_____, Plff(s).

v.

_____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)
AND
ORDER OF NOTICE
ON
APPLICATION FOR PRELIMINARY
INJUNCTION

10-3243 BLS

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) Carl Chudnofsky | DEFENDANT(S) Prime Retail, LP, Lee Outlets, LLC, Prime Outlets Acquisition Company, LLC, et al |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Lewis A. Sassoon, Sassoon & Cymrot, LLP 84 State St., Boston, MA 02109 (617)720-0099 Board of Bar Overseers number 442600 | ATTORNEY (if known) |
|---|---|

Origin Code

Original Complaint

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BA2 | Breach of Contract | (B) | (X) Yes    ( ) No |

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

The Plaintiff, Carl Chudnofsky, was employed as a high level executive by the Defendant, Prime Retail, L.P., pursuant to a written employment agreement signed by both parties. Based on the Defendants' own financial statements, Mr. Chudnofsky earned $2,110,973.31 in bonuses as calculated under the arithmetic formulas in his employment agreement, of which of the NOI Bonus is $374,398 and the Value Creation Bonus is $1,736,575.31. Prime Retail and its related entities refuse to pay Mr. Chudnofsky his bonuses as due pursuant to the employment agreement. Prime Retail is in the process of selling its only Massachusetts asset, the Prime Outlets in Lee, MA. Prime Retail and its principals stand to make approximately $400 Million dollars from the sale of the Lee Outlets. Mr. Chudnofsky is requesting a temporary restraining order and an ex-parte real estate attachment on the property in Lee, MA.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     DATE: 8/16/10

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                  SUPERIOR COURT
                                             BUSINESS LITIGATION SESSION
                                             C.A. No. 10-3243 BLS

_____
                                    )
CARL CHUDNOFSKY,                    )
            Plaintiff,              )
                                    )
    vs.                             )
                                    )
PRIME RETAIL, L.P.; LEE OUTLETS, LLC;    )
PRIME OUTLETS ACQUISITION COMPANY,       )    **COMPLAINT**
LLC; PFP VENTURE, LLC; DAVID             )    **AND CLAIM FOR TRIAL BY**
LICHTENSTEIN; ROBERT A. BRVENIK; and     )    **JURY**
PEYTON OWENS,                            )
            Defendants,             )
                                    )
    and                             )
                                    )
LEE OUTLETS, LLC; PRIME OUTLETS          )
ACQUISITION COMPANY, LLC; and PFP        )
VENTURE, LLC,                            )
            Reach-and-Apply Defendants.  )
_____     )

## INTRODUCTION

The Plaintiff, Carl Chudnofsky, was employed as a high level executive by the

Defendant, Prime Retail, L.P., pursuant to a written employment agreement signed by both

parties. Prime Retail, L.P. had two businesses: the operation of off-price or outlet malls and the

operation of full-price retail malls. Mr. Chudnofsky is an expert in the operation of full-price

retail malls and was hired by the Defendants to operate their portfolio of full-price retail malls.

In addition to a substantial salary, the Plaintiff's employment agreement called for two non-

discretionary bonuses, a so-called NOI Bonus pursuant to which the Plaintiff was to receive 20%

of the net operating income increases for the full price shopping malls he was operating for the

1

Defendants and a so-called Value Creation Bonus pursuant to which Plaintiff was to receive 7.5% of increased value with an arithmetic formula for calculating project value based, again, on net operating income. Based on the Defendants' own financial statements, Mr. Chudnofsky earned $2,110,973.31 in bonuses as calculated under the arithmetic formulas in his employment agreement, of which of the NOI Bonus is $374,398 and the Value Creation Bonus is $1,736,575.31.

As has been widely reported in the national financial press, the Defendants have suffered serious financial reverses from other investments and have sold or are in the process of selling all of their mall properties, outlet and full-price. Mr. Chudnofsky's employment by Prime Retail, L.P. ended in June, 2010. At the conclusion of his employment, he inquired about his bonuses. None of the Defendants and no one on their behalf has ever denied that the Plaintiff is entitled to his contractual bonuses or disputed his calculation thereof. Defendants simply informed Mr. Chudnofsky that he would not be paid either of his bonuses and was told that "he could do whatever he had to do" with respect to his bonus compensation but that the Defendants had no intention of paying him anything. Mr. Chudnofsky sent his lawyers to meet with the Defendants at their offices in Lakewood, New Jersey in early August, 2010, and his lawyers were told that no bonuses would be paid and were offered no explanation except that "there was a long line of people waiting to be paid" and that the Defendants "have different numbers for different purposes." In the meantime, the Defendants have given termination notices to all of their employees effective September 1, 2010 and are in the process of closing a sale of their remaining properties at the very moment this Complaint is being filed.

## PARTIES AND JURISDICTION

1.     The Plaintiff CARL CHUDNOFSKY is an individual who resides in Sudbury, Middlesex County, Massachusetts.

2.     The Defendant PRIME RETAIL, L.P. ("Prime") is a Delaware limited partnership registered for business in Massachusetts, whose registered agent is located in Boston, Suffolk County, Massachusetts.

3.     The Defendant LEE OUTLETS, LLC ("Lee") is a Delaware limited liability company registered for business in Massachusetts, with a principal place of business in Boston, Suffolk County, Massachusetts. In the alternative, Lee is also named in this Complaint as a Reach-and-Apply Defendant.

4.     The Defendant PRIME OUTLETS ACQUISITION COMPANY, LLC ("POAC") on information and belief is a limited liability company which is not registered for business in Massachusetts, with a principal place of business in Baltimore, Maryland. In the alternative, POAC is also named in this Complaint as a Reach-and-Apply Defendant.

5.     The Defendant PFP VENTURE, LLC ("PFP") is a Delaware limited liability company registered for business in Massachusetts, whose registered agent is located in Boston, Suffolk County, Massachusetts. In the alternative, PFP is also named in this Complaint as a Reach-and-Apply Defendant.

6.     The Defendant DAVID LICHTENSTEIN is an individual who on information and belief resides in Monsey, New York.

7.     The Defendant ROBERT BRVENIK is an individual who on information and belief resides in Bethesda, Maryland.

3

8.     The Defendant PEYTON OWENS is an individual who on information and belief resides in the State of Maryland.

9.     Pursuant to G.L. c. 223A, § 3, this Court has personal jurisdiction over the nonresident Defendants in that those Defendants transacted business in this commonwealth and plaintiff's claims arise from those Defendants' transaction of such business.

## FACTUAL ALLEGATIONS

10.     On or around May 30, 2007, Prime and Chudnofsky entered into an employment agreement ("Agreement") (Exhibit 1).

11.     The Agreement provides that Prime will employ Chudnofsky as its EVP-Managing Director of Prime's Full Price Retail Business, for a term of three (3) years (June 4, 2007 through June 3, 2010).

12.     The Agreement provides that Chudnofsky's annual base salary will be $600,000.00 paid in bi-weekly increments.

13.     Additionally, the Agreement provides that Prime will pay Chudnofsky a "NOI Bonus" defined as a 20% of the year over year NOI (net operating income) increase of existing full price properties.

14.     Additionally, the Agreement provides that Prime will pay Chudnofsky a "Value Creation Bonus" defined as 7.5% of the value created above current value for existing projects and the Agreement further provides a formula for calculating the Value Creation Bonus.

15.     The Agreement (Exhibit 1) is the only written contract between Prime and Chudnofsky.  The Agreement was not modified by either party and remained in effect during Chudnofsky's term of employment.

4

16.     During the course of his employment, Chudnofsky normally worked at Prime's location in Natick, Massachusetts.

17.     Chudnofsky remained employed at and by Prime for the entire term of the Agreement (June 4, 2007 through June 4, 2010).

18.     Based on Prime's own financial statements, Prime owes Chudnofsky $2,110,973.31 in bonuses as calculated under the arithmetic formulas in the Agreement of which the NOI Bonus is $374,398.00 and the Value Creation Bonus is $1,736,575.31.

19.     In June of 2010, Chudnofsky met with Prime (which designated Defendant Peyton Owens, President and COO of a related entity known as The Lightstone Group, as its agent for the purposes of this meeting) to discuss payment of the amounts owed to him.  At the end of that meeting, Chudnofsky was informed without any explanation, that Prime did not intend to pay him anything under either Bonus calculation.

20.     Prime does business in Massachusetts and operates an outlet mall in Lee, Massachusetts ("The Prime Outlets").

21.     Prime directly or indirectly owns and operates a number of purportedly different entities under its corporate umbrella, including various entities that have held title to real estate in Lee, Massachusetts where The Prime Outlets business is located ("Property").  The Property consists of various parcels that have been subdivided and conveyed back and forth between Prime LP's various entities.

22.     On information and belief, title to the Property is, for Prime's convenience, presently in Defendant Lee.

23.     On information and belief, Prime LP is the true owner of the Property.

24.     Defendant Prime is in the process of selling The Prime Outlets and the Property to Simon Malls Properties of Indianapolis.  This transaction is to close imminently.

25.     On information and belief, after the sale of the Property, Defendant Prime will have no assets in Massachusetts.  Plaintiff is unaware of any other property in Massachusetts owned by any Defendant.

26.     A recent deed recorded on March 1, 2010 in the Berkshire County (Middle) Registry of Deeds in Book 4494 Page 226, shows that Defendant POAC is the general partner of Defendant Prime; that said Defendant Prime is the sole member of Defendant PFP; and that said Defendant PFP in turn is the sole member of Defendant Lee.

27.     According to the same deed, Defendant Robert A. Brvenik is the President of Defendant POAC.  Brvenik is the same individual who signed the Agreement (Exhibit 1) as President of Defendant Prime.

28.     According to the records kept by the Secretary of the Commonwealth, Defendants PFP and Lee both state a principal place of business located at 1985 Cedar Bridge Avenue in Lakewood, New Jersey.  The same records identify Defendant David Lichtenstein as an authorized person for Defendant PFP, at the same Lakewood, New Jersey address.

29.     Lichtenstein is the principal of Defendant Prime, of an entity known as The Lightstone Group (which on information and belief owns, controls and/or operates Defendant Prime), and of Prime's related entities.  A recent article in the *Wall Street Journal* describes the impending sale of The Prime Outlets (including the one in Lee, Massachusetts) and reports that Lichtenstein stands to make approximately $400,000,000.00 as a result of the sale.

30.     Recently, Chudnofsky received wage payments under the Agreement directly from The Lightstone Group.

6

31.     Defendant Prime is the beneficial owner of the following companies that have held title to the Property:

    a.   Horizon/Glen Outlet Centers, LP (by merger)

    b.   Third Horizon Group, LP (by merger)

    c.   The Prime Outlets at Lee, LP (Defendant Prime is the general partner)

    d.   Prime Lee Development, LP (Defendant Prime is the general partner)

    e.   Lee Outlets, LLC (as described in paragraphs 26-28 herein)

    f.   PFP Venture, LLC (as described in paragraphs 26-28 herein)

    g.   Lee Outparcels, LLC (David Lichtenstein is the manager)

## COUNT I
### (Prime – Breach of Contract)

32.     Chudnofsky repeats the allegations of Paragraphs 1 through 31.

33.     Prime owes Chudnofsky $2,110,973.30 in wages as non-discretionary employment contract earned bonuses as defined and calculated under the Agreement for the categories of "Value Creation Bonus" and "NOI Bonus".

34.     In June, 2010, Chudnofsky made demand upon Prime for payment of these wages.  Prime failed and/or refused to pay Chudnofsky anything, without explanation.

35.     Prime's failure and/or refusal to pay Chudnofsky the amounts it owes him for the "Value Creation Bonus" and "NOI Bonus" constitute a breach of the Agreement.

36.     Chudnofsky fulfilled all of his obligations under the Agreement.

37.     Chudnofsky has been damaged as a result of Prime's breach of the Agreement.

## COUNT II
### (Prime, Lichtenstein, Brvenik and Owens – Unpaid Wages in Violation of G.L. c. 149, 151)

38.     Chudnofsky repeats the allegations of Paragraphs 1 through 37.

39.     Chudnofsky was employed at Prime effective June 4, 2007 until June 3, 2010 as Executive Vice President – Managing Director of Price Retail Business.

40.     At the date of expiration of the term of Chudnofsky's employment, Prime owed him $2,110,973.31 in wages as non-discretionary employment contract earned bonuses as defined and calculated under the Agreement by simply applying the numbers in Prime's own financial statements to the arithmetic bonus formulas in the Agreement.

41.     In June, 2010, Chudnofsky made demand upon Prime for payment of his wages resulting from the non-discretionary employment contract earned bonuses.  Prime failed and/or refused to pay Chudnofsky anything, without explanation.

42.     During all times relevant to this Complaint, Defendants Lichtestein, Brvenik and Owens variously served as President or officers of Prime (and/or its related entities) or were agents having management of Prime (and/or its related entities).

43.     On July 14, 2010, Chudnofsky filed a complaint with the Office of the Attorney General (Exhibit 2), and by letter dated July 30, 2010 (Exhibit 3) the Inspector for the Fair Labor and Business Practices Division of the Office of the Attorney General for the Commonwealth of Massachusetts replied, and, among other things, granted Chudnofsky the authority to pursue this matter privately in accordance with Massachusetts General Laws chapters 149 and 151.

44.     In accordance with Section 150 of Chapter 149 of the Massachusetts General Laws, Chudnofsky institutes and will prosecute in his own name and on his own behalf this civil

action for injunctive relief, for damages and for lost wages and other benefits, including his NOI

Bonus and Value Creation Bonus.  Should Chudnofsky prevail in this action, Massachusetts law

requires that he be awarded treble damages, as liquidated damages, for his lost wages and other

benefits of $2,110,973.31 and requires that he also be awarded the costs of this litigation and

reasonable attorneys' fees.  Accordingly, Chudnofsky's claim against the Defendants is, pursuant

to Chapter 149 §150, $6,332,919.93, plus interest, costs and attorneys' fees.

## COUNT III
### (All Defendants – Injunctive Relief)

45.     Chudnofsky repeats the allegations of Paragraphs 1 through 44.

46.     In accordance with widely published national financial press reports and of the

Plaintiff's own knowledge, the Defendants are currently in the process of selling all of their

assets and distributing the proceeds, including a reported $400 million to the Defendant, David

Lichtenstein.  Plaintiff believes that the closing on the sale of Defendants' assets to Simon Malls

will take place at any moment, likely this week, and Plaintiff has learned that Defendants'

employees and attorneys are in Indianapolis, Indiana with representatives of Simon Malls for

such closing as this Complaint is being filed.

47.     Plaintiff has a high likelihood of success on the merits of this Complaint because:

(a)     both the NOI Bonus and the Value Creation Bonus are the subject of explicit,

written employment contract terms with non-subjective simple arithmetic

formulas for the calculation of the two non-discretionary bonuses; and

(b)     Plaintiff has used the net operating income numbers from the Defendants' own

financial statements in the formulas for calculation of his NOI Bonus and Value

Creation Bonus; and

9

(c)     Massachusetts law makes treble damages and attorneys' fees mandatory for non-

payment of wages.

48.     Since Defendants have refused to pay the Plaintiff his NOI Bonus and Value

Creation Bonus without explanation (and have, in fact, taunted him to "do whatever he needs to

do"), it is clear that, absent injunctive relief, the Plaintiff will be irreparably harmed because the

Defendants intend to sell all of their assets and dispose of the proceeds without making any

provision for the payment of Plaintiff's wage claim.  Conversely, the Defendants will not be

harmed by placing in escrow an amount sufficient to satisfy Plaintiff's wage claim, which funds

will be available and paid to Defendants if Plaintiff's wage claim fails or is determined to be in

an amount less than the formula calculation trebled.

49.     As evidenced by both the ancient and current legislative action to protect the

payment of wages for all wage earners (including highly paid wage earners), there is clearly a

public policy in effect to protect the Plaintiff's claims.

50.     The Plaintiff should be granted injunctive relief to protect payment on his wage

claim should the same be determined to be due and owing by this Court.

## COUNT IV
### (Lee, POAC, PFP –Liability as Alter Ego of Prime)

51.     Chudnofsky repeats the allegations of Paragraphs 1 through 50.

52.     On information and belief, Lee, POAC and PFP each share with Prime identical

directors, officers and/or owners.  Each entity is under the ultimate control of the same individual

(Mr. David Lichtenstein).  Each entity shares substantially the same management and is involved

generally and ultimately in the same type of business.

10

53.    Lee, POAC and PFP each is an alter ego of Prime and each shares Prime's liability to Chudnofsky under the Agreement.

## COUNT V
### (Lee – Reach-and-Apply)

54.    Chudnofsky repeats the allegations of Paragraphs 1 through 53.

55.    Lee is believed to hold (or will hold) proceeds from the sale of The Prime Outlets in Lee, Massachusetts and/or the Property, which is or will become payable, or will be held for the benefit of, the Defendant Prime.

56.    The proceeds are not presently within the control of Prime and cannot be reached to be attached or taken on execution at an action at law against Prime.

57.    Prime owes Chudnofsky monies pursuant to the terms of the Agreement, and for payment of said monies, Chudnofsky seeks to reach and apply the proceeds payable to (or held for the benefit of) Prime by Lee.

58.    In order to protect Plaintiff's rights pursuant to this Count V reach and apply, Prime must be restrained from in any way alienating any monies due or to become due or payable to it from any of the reach and apply Defendants and, in turn, the reach and apply Defendants must be restrained from transferring any property or making any payments to or for the benefit of Prime or any of the other Defendants.

## COUNT VI
### (POAC – Reach-and-Apply)

59.    Chudnofsky repeats the allegations of Paragraphs 1 through 58.

60    POAC is believed to hold (or will hold) proceeds from the sale of The Prime Outlets in Lee, Massachusetts and/or the Property, which is or will become payable, or will be held for the benefit of, the Defendant Prime.

11

61.     The proceeds are not presently within the control of Prime and cannot be reached to be attached or taken on execution at an action at law against Prime.

62.     Prime owes Chudnofsky monies pursuant to the terms of the Agreement, and for payment of said monies, Chudnofsky seeks to reach and apply the proceeds payable to (or held for the benefit of) Prime by POAC.

63.     In order to protect Plaintiff's rights pursuant to this Count VI reach and apply, Prime must be restrained from in any way alienating any monies due or to become due or payable to it from any of the reach and apply Defendants and, in turn, the reach and apply Defendants must be restrained from transferring any property or making any payments to or for the benefit of Prime or any of the other Defendants.

**COUNT VII**
**(PFP – Reach-and-Apply)**

64.     Chudnofsky repeats the allegations of Paragraphs 1 through 63.

65.     PFP is believed to hold (or will hold) proceeds from the sale of The Prime Outlets in Lee, Massachusetts and/or the Property, which is or will become payable, or will be held for the benefit of, the Defendant Prime.

66.     The proceeds are not presently within the control of Prime and cannot be reached to be attached or taken on execution at an action at law against Prime.

67.     Prime owes Chudnofsky monies pursuant to the terms of the Agreement, and for payment of said monies, Chudnofsky seeks to reach and apply the proceeds payable to (or held for the benefit of) Prime by PFP.

68.     In order to protect Plaintiff's rights pursuant to this Count VII reach and apply, Prime must be restrained from in any way alienating any monies due or to become due or

payable to it from any of the reach and apply Defendants and, in turn, the reach and apply

Defendants must be restrained from transferring any property or making any payments to or for

the benefit of Prime or any of the other Defendants.

WHEREFORE, Plaintiff Carl Chudnofsky prays that this Honorable Court:

(a)  enter a temporary restraining order/preliminary injunction restraining the
Defendants: (i) from receiving any funds from any source from the sale of any assets
outside the ordinary course of business, including, without limitation, from the sale
of The Prime Outlets,  the Property and/or any property of any Defendant unless the
Defendants demonstrate that they are holding in escrow for Plaintiff's benefit an
amount equal at least to the sum of $6,500,000.00 during the pendency of this action
or until further Order of this Court; and (ii) from paying, disbursing, or otherwise
transferring any funds or assets to any other person or entity except in the ordinary
course of business unless the Defendants demonstrate that they are holding in
escrow for Plaintiff's benefit an amount equal at least to $6,500,000.00 during the
pendency of this action or until further Order of this Court;

(b)  enter a temporary restraining order/preliminary injunction restraining each Reach-
and-Apply Defendant from paying, disbursing, or otherwise transferring any funds
in their respective possession that may be payable to any of the Defendants, unless
the Reach-and-Apply Defendants demonstrate that they are collectively holding in
escrow for Plaintiff's benefit an amount at least equal to $6,500,000.00, during the
pendency of this action or until further Order of this Court and that the Defendants
be restrained from transferring or in any way alienating any funds or property
payable to them or for their benefit from any Reach-and -Apply Defendant;

(c)  permit Plaintiff Carl Chudnofsky to reach and apply funds up to at least
$6,500,000.00, which funds are held by the Reach-and-Apply Defendants for the
benefit of the Defendants

(d)  enter judgment for Plaintiff Carl Chudnofsky and against Defendants Prime,
Lichtenstein, Brvenik and Owens in the amount of $6,332,919.93, plus interest,
costs and attorneys' fees;

(e)  grant a special real estate attachment of the real estate titled to Defendant, Lee
Outlets, LLC,; and

(f)   grant Plaintiff Carl Chudnofsky any further relief which this Court may deem just
and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

CARL CHUDNOFSKY,
By his attorneys,
SASSOON & CYMROT LLP

Lewis A. Sassoon (B.B.O. No. 442600)
Gustavo A. del Puerto (B.B.O. No. 568056)
Anthony A.A. McGuinness (B.B.O. No. 661478)
84 State Street, Suite 820
Boston, MA  02109
617-720-0099

and

THE GORDON LAW FIRM LLP

Stephen F. Gordon (B.B.O. No. 203600)
101 Federal Street, 17th Floor
Boston, MA 02110-1844
617-261-0100
Email: sgordon@gordonfirm.com

Dated: 8/16/10

14

1



primeretail.com

217 East Redwood Street, 20th Floor, Baltimore, MD 21202, phone 410-234-0782, fax 410-234-1701

May 30, 2007

Carl Chudnofsky
89 Bridle Path
Sudbury, MA 01776

Dear Carl,

I am excited that you will be joining us as the EVP-Managing Director of our Full Price Retail Business. Your outstanding experience, industry connections and dry sense of humor will be significant assets to our team.

As discussed, the following summarizes the terms of your employment, which will be included in a formal employment agreement that we will immediately begin drafting. We anticipate a formal agreement will be executed on or before June 29, 2007.

### Term
3 years

### Commencement Date
June 4, 2007

### Base Salary
Annual salary will be $600,000 paid in bi-weekly payments per company policy.

### NOI Bonus
As an incentive to increase net operating income of the existing full price properties, you will receive 20% of the year over year NOI increase, payable by March 1st of the succeeding year (i.e., 2007 incentive will be paid by 3/1/08.) Your incentive will be prorated for the time employed in each year (i.e., if you start on 6/4/07, your 2007 bonus will be 7/12 of the earned amount.) For the 2007 bonus we will use the 2006 actual NOI as your base, for 2008 and beyond, we will use the prior year actual NOI. Macon and Burlington Square incentives will be mutually agreed upon in formal contract.

### Value Creation Bonus
As an incentive to increase value of the existing projects you will receive 7.5% of the value created above current value. For purposes of the calculation, project value is defined as NOI divided by an 8% cap rate (i.e., current value is assumed to be the 2006 year end actual NOI divided by 8%, future values will be calculated as in-place NOI divided by 8%). The value creation bonus will be earned over 3 years, 1/3 vested at the end of each year of employment. The bonus will be paid at the earlier of the sale of the properties (a proportionate share will be paid if properties are sold individually versus the entire portfolio) or July 31, 2010. For any properties sold prior to May 29, 2010, the value creation bonus, for that asset only, becomes fully

vested and payable at the time of sale. Protection will be granted for any downside slide in value for Macon and Burlington. Final contract will include schedule of malls as of 1/01/07

### Acquired Properties

Any full price mall properties acquired and managed by you during the term of your contract will be eligible for the NOI and value creation bonus (5% of value created) programs. For plan purposes, NOI will be defined as in-place NOI as of purchase, project value will be defined as in-place NOI divided by an 8% cap rate.

### Developed Properties

Any full price mall properties developed and managed by you during the term of your contract will be eligible for the value creation bonus only, at 5% of value created. Value created will be defined as in-place first year stabilized NOI divided by an 8% cap rate less project cost.

### Benefits

You are entitled to our standard company benefits for senior executives, including medical and dental insurance and the flexible spending account program. Prime Retail, L.P., however, retains the right to change, terminate, or amend policies or unaccrued benefits at any time in order to comply with changes in the law, and/or respond to cost increases in benefits provided. Your medical insurance coverage becomes effective the first day of the first month following thirty (30) consecutive days of employment. In other words, because your starting date is expected to be on June 4, 2007, your insurance coverage will go into effect August 1, 2007. You will eligible for four weeks of paid vacation each year.

### Commuting Costs

The company will arrange for and pay the cost of an apartment in Baltimore exclusively for your use. You will be reimbursed for one weekly economy commute flight between Boston and Baltimore during your tenure, as well as all transportation to and from airports in Boston and Baltimore.

### Contract Buy-out

At any time prior to December 31, 2007, Prime Retail can terminate our contract with you. If Prime elects to do so, we will pay you a termination fee of $350,000 as full consideration / buy-out of your contract.

Please understand that the offer that is stated in this letter is the only offer that is being made to you. No officer, supervisor, or employee of Prime Retail, L.P. has any authority to make any promises or commitments, either verbal or written, or enter into any agreement for employment for any specified period of time, or to make any assurances contrary to, or not contained in, this letter.

This offer is contingent upon (1) verification of your eligibility to work in the United States, (2) a successful background check, and (3) a successful reference check. In the event that any of these contingencies are not met in Prime Retail, L.P.'s sole opinion, this offer may be rescinded or your employment may be terminated.

We look forward to your acceptance of the terms of your employment with Prime Retail, L.P. To do so, please sign, date, and return the attached copy of this letter as soon as possible. A self-addressed envelope is enclosed for your use.

Best regards,

Robert Brvenik
President

RAB:ss

Cc:  Pamela Meadows

Accepted:

_____
Signature

6/4/07
_____
Date

2



SASSOON & CYMROT
ATTORNEYS AT LAW

FILE COPY

84 State Street
Boston, MA 02109
TEL   617 720-0099
FAX   617 720-0366
URL   www.sandclawyers.com

amcguinness@sandclawyers.com
Ext. 124

July 14, 2010

**VIA FIRST CLASS MAIL**

The Commonwealth of Massachusetts
Office of the Attorney General
One Ashburton Place, Room 1813
Boston, MA 02108

RE: Non-Payment of Wage Complaint

Dear Sir or Madam:

Our office represents Carl Chudnofsky in matters relating to his non-payment of wage complaint against his former employer, Prime Retail, LP. I have enclosed the Non-Payment of Wage Complaint Form as filled out by Mr. Chudnofsky. Mr. Chudnofsky would like to file a civil law suit against his former employer and we are requesting a waiver of the 90 day waiting period in order to file the complaint immediately. I have included below a brief summary of the facts surrounding this complaint.

Mr. Chudnofsky ("Chudnofsky") entered into a written employment agreement with Prime Retail, LP ("Prime") in June of 2007 ("Employment Agreement"). The Employment Agreement was for a period of three years. Chudnofsky was an executive vice president and was in charge of overseeing a portfolio of full priced shopping centers owned by Prime. The Employment Agreement, which was drafted by Prime, delineated two performance based commissions available to Chudnofsky, a net operating increase commission ("NOI") and a value creation commission ("Value Creation"). NOI and Value Creation were based on individual shopping mall's performance as tracked by Prime's financial reports. The NOI and Value Creation became due at the end of Chudnofsky's employment term pursuant to the Employment Agreement. Chudnofsky calculated the commission due to him under the NOI and the Value Creation using Prime's financial numbers. Chudnofsky presented his calculations to Prime and asked to be paid the commission that was due. Prime informed Chudnofsky that it would not pay him the NOI or Value Creation and would never pay Chudnofsky for these commissions.

This dispute has not been resolved and Chudnofsky would now like to file a civil suit. Therefore, Chudnofsky is requesting a waiver of the 90 day period from the Office of the Attorney General. Please contact me if there are any problems with this request or if you need any further information. I have included a self addressed stamped envelope and a copy of the

complaint form. Please forward to me a time stamped copy of the complaint form as well as the authorization to file a civil suit immediately.

Yours respectfully,

Anthony A. A. McGuinness

Enclosure



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL



FAIR LABOR DIVISION
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

RECEIVED

JUL 23 2010

OFFICE OF THE ATTORNEY GENERAL
FAIR LABOR DIVISION
ONE ASHBURTON PLACE, ROOM 1813
BOSTON, MA 02108



<u>Re: Wage Complaint Form Instructions</u>

Please fill out this form as completely and accurately as possible.  Also, attach photocopies of any supporting information such as pay stubs, work logs, and correspondence from your employer.  Please keep the originals for your records.  Return the completed form and materials to:

**Office of the Attorney General**
**Fair Labor Division**
**One Ashburton Place, Rm 1813**
**Boston, MA 02108**

Before we can process your complaint, our office must receive full and complete information from you.  Please check to make certain you have provided the following:

- Your employer's complete name and address, including zip code
- Description of the work you performed
- Amount of wages you are owed, and your hourly or weekly rate of pay
- Exact dates worked but not paid
- City or town where you worked
- Last date you worked
- Date you made a personal demand to your employer for unpaid wages, and your employer's response
- Copies of pay stubs
- If you claim unpaid vacation, include a copy of your employer's vacation policy
- Any information that would

After reviewing the material you provide, the Attorney Generals Office will determine whether or not conduct a preliminary investigation and whether further action is warranted.  This may include the following:

- Seeking restitution of your unpaid wages
- Issuing a civil citation against your employer
- Seeking criminal charges against your employer

If the Attorney General elects to institute a criminal or civil enforcement action, you will be required to be interviewed by and investigator from this office.  Later, you may also need to appear at a hearing.

If you wish to file your own lawsuit, ninety days after filing a complaint with this office, you may sue your employer in civil court for your wages, plus triple damages and legal fees.  You may also request written permission from the Attorney General's Office to proceed before the end of the ninety day waiting period.

Please note that it usually takes several weeks to review and conduct a preliminary investigation of your complaint.

Your complaint may be forwarded to your employer for response.



# THE COMMONWEALTH OF MASSACHUSETTS
# OFFICE OF THE ATTORNEY GENERAL

### FAIR LABOR DIVISION
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

RECEIVED

(617) 727-3200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

JUL 23 2010

OFFICE OF THE ATTORNEY GENERAL
FAIR LABOR DIVISION
ONE ASHBURTON PLACE, ROOM 1813
BOSTON, MA 02108

MARTHA COAKLEY
ATTORNEY GENERAL

### Non-Payment of Wage and Workplace Complaint Form- Page 2

Please provide as much information as you can on this form and mail it to the above address.

## Employee Information

First name **Carl**          Middle name **Barry**          Last name **Chudnofsky**

Social Security Number* **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**          Date of birth **9/9/1948**          Gender M **X**   F ___
                                                                 *(month/day/year)*

Current mailing address **89 Bridle Path**

City **Sudbury**          State **MA**   Zip **01776**   Email **cchudnofsky@earthlink.net**

Home phone **978-443-8710**          Cell phone **617-974-5525**

Emergency contact name and phone **Carol Chudnofsky**
                                    *(friend / family member who can reach you)*

Mailing address **89 Bridle Path**          City **Sudbury**          State **MA**   Zip **01776**

Start date of employment **6/4/2007**          End date of employment **6/2/2010**
                          *(month/day/year)*                          *(month/day/year)*

**Please Read:** Under most circumstances, the text of your complaint will be considered a public record and be available to any member of the public upon request. In response to such a request, *we generally will not disclose your name, address, phone number, or any other information that identifies you and will not disclose this form in response to any request that specifically seeks the complaint you submitted.* Your record in its entirety may, however, be disclosed to law enforcement and regulatory agencies who may assist in resolving your complaint.

*\*Providing a Social Security Number is voluntary. It will aid in processing your complaint, but we will proceed without one.*



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### FAIR LABOR DIVISION
### ONE ASHBURTON PLACE, ROOM 1813
### BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

**Non-Payment of Wage and Workplace Complaint Form- Page 2**

Name of Employee: Carl Chudnofsky

Do you speak English? Yes X  No____  What language would you prefer we contact you in? _____

What type of work did you perform? Management

Name of employer Prime Retail

Are you currently working for this employer? Yes____ No X

If applicable, reason for end of employment? Quit____ Discharged ____

Did you sign a contract with the employer? Yes X  No____

Is an attorney representing you? Yes X  No ____

Has a community organization or union helped you file this complaint? Yes____ No X

If yes, please provide name(s) of the attorney, organization, or union; as well as a contact person, address, and phone number. _____

Did you ask to get paid the wages you are owed? Yes X  No____

If yes, what was the employer's response? They refused to pay.

Have you taken any other action against the employer regarding this problem? Yes____ No X

If yes, please explain. _____

An employer does not have the right to threaten, discriminate, or retaliate against you because of your efforts to collect wages. If this has happened to you, please explain. _____



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### FAIR LABOR DIVISION
### ONE ASHBURTON PLACE, ROOM 1813
### BOSTON, MASSACHUSETTS 02108

(617) 727-2200
(617) 727-3465 HELPLINE
WWW.MASS.GOV/AGO

MARTHA COAKLEY
ATTORNEY GENERAL

## Non-Payment of Wage and Workplace Complaint Form- Page 3

**Employer Information**. Please provide as much information as you can.

Company name  Prime Retail

Other business name(s) used by employer  The Lightstone Group

Company address  217 East Redwood Street      City  Baltimore      State  MA   Zip  21202

Company owner/president name  Robert Brvenik (CEO) David Lichtenstein (Owner)      License plate number(s)

Owner/president home address  5 Grand Park Dr.      City  Monsey      State  NY   Zip  10952

Owner/president phone (workplace, cell, and/or home)  201-831-0600 (work)

If known, total number of employees in company _____   Local manager/supervisor name(s) _____

City/town(s) where work was performed  Natick

**Reason for Filing Complaint**. Check all that apply and provide details below.  If you are not sure which category applies, just describe your situation below.

__ Minimum wage violation          __ Meal period violation          __ Child labor
__ Non-payment of wages          __ Overtime pay violation          X Unpaid commissions
__ Vacation pay violation*          __ Sunday overtime/holiday pay          __ Failure to provide personnel records
                                                                                                    __ Other_____
*If possible, please attach a copy of the
company vacation policy.                                                                 (specify "Other")

Time period of violation(s) is from _____ to _____
                                                      (month/day/year)              (month/day/year)

Your most recent rate of pay? $ 11,538.00  per hour/day/week (circle one)  Total amount owed? $ ~1,800,000.00

Please provide **detailed** information about what happened and what you are owed. My employment contract
called for me to be paid commission based on performance quantified by financial
statistics. I qualified for the commissions and presented the financial numbers to
Peyton "Chip" Owens requesting to be paid. Mr. Owens informed me that the company was
not going to pay me the commissions that were due under the employment contract.

## CERTIFICATION:

I hereby certify that, to the best of my knowledge and belief, this is a true and accurate statement of the facts about my complaint.

| Signature | Carl Chudnofsky | 7/21/2010 |
|---|---|---|
| Signature | PRINT your name | Date signed |

3



# THE COMMONWEALTH OF MASSACHUSETTS
# OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

(617) 727-2200
www.mass.gov/ago

MARTHA COAKLEY
ATTORNEY GENERAL

July 30, 2010

Anthony A.A. McGuinness
Season & Cymrot
84 Stare Street
Boston, MA  02109

Re: Private Right of Action – Carl Barry Chudnofsky

**Authorizing for Immediate Private Suit  - Prime Rerail**

Dear Atty. McGuinness:

Thank you for contacting the Office of the Attorney General's Fair Labor Division.

This letter is to inform you that we have carefully reviewed your complaint and have determined that the proper resolution of this matter may be through a private suit in civil court. Accordingly, we are authorizing you to pursue this matter through a civil lawsuit immediately.

Massachusetts General Laws, chapter 149, sec. 150, and chapter 151, secs. 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws. If you elect to sue in civil court, you may bring an action on your own behalf and others similarly situated, and you may obtain injunctive relief, treble damages for any loss or wages and other benefits, as well as the costs of litigation and reasonable attorneys' fees.

Without making a judgment on the merits of your complaint, this correspondence represents this office's written assent to sue and grants you the authority to pursue this matter against your employers immediately, as permitted by Massachusetts General Laws chapters 149 and 151. This office will not take further enforcement action at this time.

Thank you for your attention to this matter.

Sincerely,

Bruce Trager
Assistant Attorney General
Fair Labor Division
617-963-2336

BT/mm

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                   SUPERIOR COURT
                                              BUSINESS LITIGATION SESSION
                                              C. A. No. 10-3243 BLS

|                                    |   |
| ---------------------------------- | - |
|                                    | ) |
| CARL CHUDNOFSKY,                   | ) |
|                                    | ) |
|                  Plaintiff,        | ) |
|                                    | ) |
|            v.                      | ) |
|                                    | ) |
| PRIME RETAIL, LP,                  | ) |
| ET AL.,                            | ) |
|                                    | ) |
|                  Defendants.       | ) |
|                                    | ) |

## AFFIDAVIT OF CARL CHUDNOFSKY

I, Carl Chudnofsky, being duly sworn and under oath, do hereby state under the pains and penalties of perjury the following:

1. I was employed by Prime Retail, L.P. ("Prime LP") as Executive Vice President – Managing Director of the Full Price Retail Business from June 4, 2007 to June 4, 2010.

2. As Executive Vice President I oversaw the operation of Prime LP's portfolio of shopping malls – a group of shopping centers known as "Full Price Retail Malls" - in various locations through out the United States. These malls were later renamed the "Lightstone Malls."

3. Prime LP entered into a lease and retained an office at 5 Commonwealth Road, Natick, Massachusetts that I worked out of frequently.

4. I signed an employment agreement ("Agreement") with Prime LP on June 4, 2007. The Agreement is attached as Exhibit "A."

1

5. The Agreement was also signed by Robert Brvenik, the president and CEO of Prime LP on behalf of Prime LP.

6. The Agreement is the only written employment agreement I have with Prime LP, and the Agreement was drafted by Prime LP.

7. The Agreement provides for two different bonus compensations to be paid, a net operating income bonus ("NOI") and a value creation bonus ("Value Creation").

8. Both the NOI and Value Creation bonuses are based on the performance of individual shopping malls that I managed. The operating statements used to calculate the NOI and Value Creation bonuses were prepared by Prime LP's corporate accounting office.

9. I managed the Dakota Square Mall, Brazos Mall, Shawnee Mall, Bradley Square Mall, Martinsburg Mall, Mount Berry Mall, Shenango Mall, and the West Manchester Mall.

10. The Bradley Square Mall, Martinsburg Mall, Mount Berry Mall, and Shenango Mall were conveyed back to Prime LP's lender in 2008.

11. Two additional malls were mentioned in the Agreement, Macon Mall and Burlington Square Mall. Both of these malls are excluded under the Agreement, and as such, are excluded under the NOI and Value Creation bonuses. I never entered into any agreement concerning Macon Mall and/or Burlington Square Mall.

12. In calculating the NOI bonus for 2008 and 2009, using Prime LP's numbers, I earned $374,398.00 as follows:

   a. Dakota Square Mall - $134,511.60

   b. Brazos Mall - $163,335.80

   c. Shawnee Mall - $76,550.60

   **Total - $374,398.00**

13. In order to calculate the NOI bonus, I used the formula described in the Agreement on page one under the heading NOI Bonus. I used the actual NOI for each mall from 2009 and subtracted that number from the actual NOI for each mall for 2007. I then divided the subtracted number, which is the increase in NOI, by 20% resulting in my bonus for each mall.

14. In calculating the Value Creation bonus I earned $1,736,575.31 for creating value to the following shopping malls between fiscal year 2006 and the present based on Prime LP's numbers:

 a. Dakota Square - $308,748.00 (2006 NOI compared with 2009 NOI)

 b. Brazos Mall - $1,098,346.00 (2006 NOI compared with 2009 NOI)

 c. Shawnee Mall - $433,877.00 (2006 NOI compared with 2009 NOI)

 d. West Manchester Mall – $(101,033.44)[1] (2006 NOI compared with 2009 NOI)

 e. Bradley Square Mall - $(142,891.88)[2] (2007 NOI compared with 2008 NOI)

 f. Martinsburg Mall - $75,842.81(2007 NOI compared with 2008 NOI)

 g. Mount Berry Square Mall - $156,407.81(2007 NOI compared with 2008 NOI)

 h. Shenango Valley Mall - $(93,176.25) (2007 NOI compared with 2008 NOI)

**Total - $1,736,575.31[3]**

---

[1] The West Manchester Mall includes an additional $200,000.00 in the NOI number because of the Kohl's lease that was signed, effectively representing the "in place NOI" for this mall pursuant to the Agreement.

[2] Bradley Square Mall, Martinsburg Mall, Mount Berry Square Mall, and Shenango Mall use the 2007 actual NOI for each mall as the base rather than the 2006 actual NOI because these numbers were not available at the time of calculation. These malls also use the 2008 NOI as the comparative number as this group of malls were conveyed to the lender.

[3] 2010 actual NOI's were not available to me at the time of calculation.

15. In order to calculate the numbers for the Value Creation bonus, I used the formula described in the Agreement on page one under the heading <u>Value Creation Bonus</u>. I used the earliest available and applicable actual NOI for each mall and divided that number by the cap rate of 8% as the base. I then used the latest available actual NOI for each mall and divided that number by the cap rate of 8% as the comparative number. I then subtracted the two NOI numbers as divided by 8% resulting in the increase in NOI for each mall. I then multiplied that number by 7.5% resulting in my Value Creation bonus for each mall.

16. In June of 2010 I presented my calculations, using Prime LP's numbers, for the NOI and Value Creation bonuses to Peyton "Chip" Owens, President and COO of The Lightstone Group which owns Prime, as my contract had ended at this time and I wished to see how I would be paid my bonuses. Mr. Owens informed me that I would not be paid either of the bonuses. Mr. Owens also informed me that "I could do what ever I had to do" in order to secure my bonus compensation, but Prime LP had no intention of paying me the bonuses.

17. After my conversation with Mr. Owens, I became fearful that Prime LP would go out of its way to place any or all of Prime LP's assets out of my reach in order to thwart any attempt I might make to secure a judgment in litigation.

18. I have a strong likelihood of success in the instant case as the Agreement calls for Prime LP to pay me the NOI and Value Creation bonuses. Prime LP has refused to pay me in contravention to the terms of the Agreement.

19. Prime LP does business in Massachusetts and operates an outlet mall in Lee, Massachusetts – The Prime Outlets.

20. Prime has a number of different entities under its corporate umbrella, including various entities that have held title to the property in Lee, Massachusetts where the Prime Outlet is located ("Property"). The Property consists of various parcels that have been subdivided and conveyed back and forth between Prime LP's various entities.

21. The parcel on which the Prime Outlets are located appears to currently be titled in the name of Lee Outlets, LLC.

22. As Executive Vice President of Prime LP, I am aware that Prime LP and its general partner are the true owners of the interest in the Property. Moreover, David Lichtenstein is the principal of Prime LP, The Lightstone Group, and their various entities.

23. A recent deed recorded in the Berkshire County (Middle) Registry of Deeds in Book 4494 Page 226 on March 1, 2010 shows the following hierarchy of entities owned by Prime, LP: Prime Outlets Acquisition Company, LLC (Robert A. Brvenik signs as the president) is the general partner of Prime LP, who is the sole member of PFP Venture, LLC, who is the sole member of Lee Outlets, LLC. The deed is attached hereto as Exhibit "B."

24. Prime LP is the beneficial owner of the following companies that have held title to the Property:

   a. Horizon/Glen Outlet Centers, LP (by merger)

   b. Third Horizon Group, LP (by merger)

   c. The Prime Outlets at Lee, LP (Prime LP is the general partner)

   d. Prime Lee Development, LP (Prime LP is the general partner)

   e. Lee Outlets, LLC (Prime LP as described in paragraph 23 herein)

   f. PFP Venture, LLC (Prime LP as described in paragraph 23 herein)

g. Lee Outparcels, LLC (David Lichtenstein is the manager)

25. As Executive Vice President of Prime LP I have knowledge that Prime LP is in the *closing shortly. CC* process of selling The Prime Outlets and a sale is imminent. Prime LP is selling The Prime Outlets to Simon Malls Properties of Indianapolis. Furthermore, this sale will result in Prime LP having no assets in Massachusetts in which to attach as security.

26. A recent article in the *Wall Street Journal* describes the sale of The Prime Outlets in Lee, Massachusetts and details that David Lichtenstein stands to make approximately $400,000,000.00 as a result of the sale. The article is attached hereto as Exhibit C.

Signed under the pains and penalties of perjury this 15th day of ~~July~~ *August CC* 2010.

Carl Chudnofsky

6



**PR🅞ME**
R E T A I L

217 East Redwood Street, 20th Floor, Baltimore, MD 21202, phone 410-234-0782, fax 410-234-1701   primeretail.com

May 30, 2007

Carl Chudnofsky
89 Bridle Path
Sudbury, MA  01776

Dear Carl,

I am excited that you will be joining us as the EVP-Managing Director of our Full Price Retail Business. Your outstanding experience, industry connections and dry sense of humor will be significant assets to our team.

As discussed, the following summarizes the terms of your employment, which will be included in a formal employment agreement that we will immediately begin drafting. We anticipate a formal agreement will be executed on or before June 29, 2007.

**Term**
3 years

**Commencement Date**
June 4, 2007

**Base Salary**
Annual salary will be $600,000 paid in bi-weekly payments per company policy.

**NOI Bonus**
As an incentive to increase net operating income of the existing full price properties, you will receive 20% of the year over year NOI increase, payable by March 1st of the succeeding year (i.e., 2007 incentive will be paid by 3/1/08). Your incentive will be prorated for the time employed in each year (i.e., if you start on 6/4/07, your 2007 bonus will be 7/12 of the earned amount.) For the 2007 bonus we will use the 2006 actual NOI as your base, for 2008 and beyond, we will use the prior year actual NOI. Macon and Burlington Square incentives will be mutually agreed upon in formal contract.

**Value Creation Bonus**
As an incentive to increase value of the existing projects you will receive 7.5% of the value created above current value. For purposes of the calculation, project value is defined as NOI divided by an 8% cap rate (i.e., current value is assumed to be the 2006 year end actual NOI divided by 8%, future values will be calculated as in-place NOI divided by 8%). The value creation bonus will be earned over 3 years, 1/3 vested at the end of each year of employment. The bonus will be paid at the earlier of the sale of the properties (a proportionate share will be paid if properties are sold individually versus the entire portfolio) or July 31, 2010. For any properties sold prior to May 29, 2010, the value creation bonus, for that asset only, becomes fully

*The power of passionate shopping*

vested and payable at the time of sale. Protection will be granted for any downside slide in value for Macon and Burlington. Final contract will include schedule of malls as of 1/01/07

## Acquired Properties

Any full price mall properties acquired and managed by you during the term of your contract will be eligible for the NOI and value creation bonus (5% of value created) programs. For plan purposes, NOI will be defined as in-place NOI as of purchase, project value will be defined as in-place NOI divided by an 8% cap rate.

## Developed Properties

Any full price mall properties developed and managed by you during the term of your contract will be eligible for the value creation bonus only, at 5% of value created. Value created will be defined as in-place first year stabilized NOI divided by an 8% cap rate less project cost.

## Benefits

You are entitled to our standard company benefits for senior executives, including medical and dental insurance and the flexible spending account program. Prime Retail, L.P., however, retains the right to change, terminate, or amend policies or unaccrued benefits at any time in order to comply with changes in the law, and/or respond to cost increases in benefits provided. Your medical insurance coverage becomes effective the first day of the first month following thirty (30) consecutive days of employment. In other words, because your starting date is expected to be on June 4, 2007, your insurance coverage will go into effect August 1, 2007. You will eligible for four weeks of paid vacation each year.

## Commuting Costs

The company will arrange for and pay the cost of an apartment in Baltimore exclusively for your use. You will be reimbursed for one weekly economy commute flight between Boston and Baltimore during your tenure, as well as all transportation to and from airports in Boston and Baltimore.

## Contract Buy-out

At any time prior to December 31, 2007, Prime Retail can terminate our contract with you. If Prime elects to do so, we will pay you a termination fee of $350,000 as full consideration / buy-out of your contract.

Please understand that the offer that is stated in this letter is the only offer that is being made to you. No officer, supervisor, or employee of Prime Retail, L.P. has any authority to make any promises or commitments, either verbal or written, or enter into any agreement for employment for any specified period of time, or to make any assurances contrary to, or not contained in, this letter.

This offer is contingent upon (1) verification of your eligibility to work in the United States, (2) a successful background check, and (3) a successful reference check. In the event that any of these contingencies are not met in Prime Retail, L.P.'s sole opinion, this offer may be rescinded or your employment may be terminated.

We look forward to your acceptance of the terms of your employment with Prime Retail, L.P. To do so, please sign, date, and return the attached copy of this letter as soon as possible. A self-addressed envelope is enclosed for your use.

Best regards,

Robert Brvenik
President

RAB:ss

Cc:  Pamela Meadows

Accepted:

_____
Signature

6/4/07
Date

B

Bk: 04494 Pg: 226

2010 00783871
Bk: 4494 Pg: 226   Doc: DEED
Page: 1 of 3   03/01/2010 10:34 AM

## KNOW ALL PERSONS BY THESE PRESENTS

THAT, **LEE OUTLETS, LLC,** a Delaware limited liability company with an address c/o Prime

Retail Property Management, LLC,  217 East Redwood Street, Twentieth Floor, Baltimore, MD

21202, for **NO CONSIDERATION** as this constitutes a **TRANSFER** and **NOT A SALE,** grant

to **JOHN T. COTY, Jr.,** whose residence and post office address is 50 First Street, Lee,

Massachusetts 01238, **WITHOUT COVENANTS,** the land in Lee, Berkshire County,

Massachusetts, bounded and described as follows:


                        See Exhibit A  Attached

Exhibit A

Lot 1, containing 14,331 sq. ft. of land, as shown on a plan entitled "Survey of Land in Lee, Massachusetts, prepared for Prime Lee Development Limited Partnership dated January 31, 2001 and recorded in the Berkshire Middle District Registry of Deeds in Plat I, No. 44.

Reserving to the Grantor, its successors and assigns, an easement, wherever same may be necessary in the discretion of the Grantor, on, over and through the granted premises for the purposes of maintaining the integrity of the embankment and protecting the wetlands on Grantor's adjoining property.

Grantee is restricted from any construction or alteration of any portion of the granted premises within fifty (50) feet of those premises adjoining the granted premises which are currently owned by Michael A. and Patricia J. Simmons as described in their deed recorded in the Berkshire Middle District Registry of Deeds in Book 1081, Page 300.

Reserving to the Grantor, its successors and assigns, any and all right, title and interest in and to Oak Street, so called, as set forth on the above referenced plan.

Being a portion of the premises described a deed recorded in said Registry in Book 1611, Page 840.

IN WITNESS WHEREOF, the said Lee Outlets, LLC has caused its seal to be affixed hereto and these presents to be signed, acknowledged and delivered in its name and on its behalf by the undersigned, the President of Prime Outlets Acquisition Company LLC, the general partner of Prime Retail, L.P., the sole member of PFP Venture LLC, the sole member of Lee Outlets, LLC.

Dated: February 18, 2010

LEE OUTLETS, LLC, a Delaware limited liability company

By:  PFP Venture LLC, a Delaware limited liability company,
     Its sole Member

By:  Prime Retail, L.P., a Delaware limited partnership, its sole
     Member

By:  Prime Outlets Acquisition Company LLC, as Delaware
     limited liability company, its General Partner

By: _____
     Name:  Robert A. Brvenik
     Title:  President

STATE OF MARYLAND

CITY:  BALTIMORE

On this 18th day of February, 2010, before me, the undersigned notary public, personally appeared **Robert A. Brvenik**, President of PRIME OUTLETS ACQUISITION COMPANY LLC, the general partner of PRIME RETAIL, L.P., the sole member of PFP VENTURE LLC, the sole member of LEE OUTLETS LLC, proved to me through satisfactory evidence of identification, which was personal knowledge of same, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_____
Notary Public
My Commission Expires: 12/26/2013

# THE WALL STREET JOURNAL.

WSJ.com

DECEMBER 22, 2009, 8:45 P.M. ET

## How Prime Outlets Sale Is Saving David Lichtenstein

Buying Prime Outlets Inc. in 2003 was one of the best investments that New York investor David Lichtenstein ever made. Now selling the chain of outlet centers is giving him the cash to bail himself out of his worst deal ever.

Mr. Lichtenstein's closely held company, Lightstone Group LLC, announced this month that it is selling Prime Outlets to Simon Property Group Inc. for $700 million in cash and the assumption of $1.6 billion in debt. The price tag reflects a significant increase from what Lightstone paid for Prime in 2003: $115 million in cash and the assumption of $523 million in debt.



Prime Outlets

GOOD DEAL: Prime Outlets' center in San Marcos, Texas, is one of 22 being acquired by Simon Property Group.

After paying its 40% partner in Prime, fees and other expenses, Lightstone expects to rake in about $450 million, according to people familiar with the matter. That is more than what Mr. Lichtenstein needs to dig out of his disastrous investment in Extended Stay Hotels Inc., his 660-property hotel chain that was forced to file for bankruptcy protection earlier this year.

Lightstone still owes Citigroup Inc. $80 million of the $120 million that it borrowed to acquire Extended Stay in a top-of-the-market deal in 2007 that valued the chain at $8 billion, according to people familiar with the matter. He also agreed as part of the purchase to a $100 million "bad boy" clause, a common inclusion in large financings that is meant to deter borrowers from putting their ventures into bankruptcy by making them personally liable if they do so.

Some of Extended Stay's large creditors have offered to indemnify Mr. Lichtenstein from the bad-boy liability. But others say he is liable, and it remains to be seen how the issue will be resolved in U.S. Bankruptcy Court in New York's Southern District.

But regardless the outcome, the sale of Prime Outlets, a 22-mall portfolio that Lightstone overhauled, gives the company ample cash to pay off the bad-boy clause as well as the money that it still owes Citi. "They are selling a very concentrated portfolio of high-quality, pretty well



THE WALL STREET JOURNAL
MOBILE READER

Download free for BlackBerry® for a limited time only.

Download free for iPhone™ for a limited time only.

Print Powered By [ Dynamics ]

# THE WALL STREET JOURNAL.

WSJ.com

run assets," says Jim Sullivan, an analyst with Green Street Advisors Inc.

Mr. Lichtenstein's rescue by Prime Outlets, which comes as woes mount in the commercial-real-estate world, shows that investors on the ropes can still extract cash from desirable assets as long as they aren't too highly leveraged and were acquired before prices began heading toward the moon.

But it also means that investors sometimes have to give up their pride-and-joy investments to get back to health. In another example last year, New York developer Harry Macklowe was forced to sell his prize General Motors building in Manhattan to get the cash to pay off creditors.



David Lichtenstein

The son of Brooklyn, N.Y., schoolteachers, Mr. Lichtenstein had amassed a portfolio of about 20,000 apartments and several office buildings when Lightstone bought Prime Retail in 2003. At the time, the outlet-center industry was ripe for a revamp. The format emerged in the 1970s and 1980s as a venue for manufacturers to unload their excess supplies of poor-selling and flawed goods at steep discounts. The centers were constructed along highways several miles outside of major cities due to "radius restrictions" required by department stores, which didn't want manufacturers selling their goods at a discount too close to department-store locations selling them at full price.

The bargain appeal of outlets caught on in the 1990s, when developers rushed to open more and ended up overbuilding the market. The number of U.S. outlet centers mushroomed to 307 in 2000 from 181 in 1990, according to the International Council of Shopping Centers. More recently, though, the industry's momentum has cooled as the weaker centers in overbuilt markets closed and shoppers chose discount retailers such as Wal-Mart Stores Inc. over outlet centers selling similar fare.

After buying Prime, Lightstone decided to move the company away from the outlet-center industry's reputation of offering cheap goods at cheap prices. Instead, Mr. Lichtenstein and his team sought to recast the tenant ranks of Prime's centers to focus on fashion merchandise from upscale brands. Gradually, Prime dismissed outlet-center staples such as Mikasa, Sears Hardware and the Walking Co. Holdings' Big Dog. Lightstone replaced them with the likes of Gucci Group, Armani, 7 for All Mankind jeans, Restoration Hardware Inc. and Hugo Boss.

Lightstone put an additional $700 million of debt on the Prime Outlets portfolio, using roughly $400 million of the proceeds for other Lightstone projects and the rest for expanding and renovating the outlet centers. It built a Prime Outlets center in Orlando, Fla., that now is the company's busiest, generating sales per square foot of $650 per year. It expanded and renovated its center in San Marcos, Texas, between Austin and San Antonio to mimic Piazza San Marco in Venice, complete with a singing gondolier navigating a canal.

Lightstone closed the portfolio's weaker centers, whittling it to 22 centers from more than 30.

Ultimately, the result of Lightstone's overhaul of the Prime portfolio was an increase in sales per square foot at the centers to $377 this year from $270 in 2003, according to a person familiar with the matter.

Meanwhile, the 660-hotel Extended Stay chain collapsed into bankruptcy in June after failing to keep up with payments on the nearly $8 billion of

# THE WALL STREET JOURNAL.

WSJ.com

debt that Lightstone put on it. The hotels
continue to operate while creditors are fighting in
court over how much the company is worth and
who still has claim to it.

Write to Kris Hudson at kris.hudson@wsj.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
BUSINESS LITIGATION SESSION
C.A. No. *10- 3243 BLS*

|  |  |
|---|---|
| CARL CHUDNOFSKY,<br>              Plaintiff,<br><br>     vs.<br><br>PRIME RETAIL, L.P.; LEE OUTLETS, LLC;<br>PRIME OUTLETS ACQUISITION COMPANY,<br>LLC; PFP VENTURE, LLC; DAVID<br>LICHTENSTEIN; ROBERT A. BRVENIK; and<br>PEYTON OWENS,<br>              Defendants,<br><br>     and<br><br>LEE OUTLETS, LLC; PRIME OUTLETS<br>ACQUISITION COMPANY, LLC; and PFP<br>VENTURE, LLC,<br>              Reach-and-Apply Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF CARL CHUDNOFSKY'S *EX PARTE* MOTION
## FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Carl Chudnofsky moves pursuant to Mass. R. Civ. P. 65(a) for a Temporary

Restraining Order (TRO) in the form submitted with this motion: (1) enter a temporary restraining

order/preliminary injunction restraining the Defendants: (i) from receiving any funds from any

source from the sale of any assets outside the ordinary course of business, including, without

limitation, from the sale of the real estate and/or business of The Prime Outlets mall in Lee,

Massachusetts, and/or any property of any Defendant unless the Defendants demonstrate that they

are holding in escrow for Plaintiff's benefit an amount equal at least to the sum of $6,500,000.00

during the pendency of this action or until further Order of this Court; and (ii) from paying,

disbursing, or otherwise transferring any funds or assets to any other person or entity except in the ordinary course of business unless the Defendants demonstrate that they are holding in escrow for Plaintiff's benefit an amount equal at least to $6,500,000.00 during the pendency of this action or until further Order of this Court; and

(2) enter a temporary restraining order/preliminary injunction restraining each Reach-and-Apply Defendant from paying, disbursing, or otherwise transferring any funds in their respective possession that may be payable to any of the Defendants, unless the Reach-and-Apply Defendants demonstrate that they are collectively holding in escrow for Plaintiff's benefit an amount at least equal to $6,500,000.00, during the pendency of this action or until further Order of this Court and that the Defendants be restrained from transferring or in any way alienating any funds or property payable to them or for their benefit from any Reach-and -Apply Defendant.

Plaintiff's grounds for the TRO are:

a.   Prime owes Chudnofsky $2,110,973.30 in wages as non-discretionary employment contract earned bonuses as defined and calculated under its employment Agreement with Chudnofsky for the categories of "Value Creation Bonus" and "NOI Bonus";

b.   Prime is the corporate *alter ego* for the Defendants and/or Reach-and-Apply Defendants;

c.   Defendants Lichtenstein, Brvenik and Owens are liable to Chudnofsky personally per G.L. c. 149, § 148 as officers or agents of Prime and/or Prime's related entities;

d.   The facts alleged in Count III of the Complaint.

e.   Plaintiff has been and will continue to be irreparably harmed because the corporate Defendants will be rendered insolvent after the sale of The Prime Outlets and therefore it will not be possible to return the parties to the positions they currently occupy.  Also, the purpose of the requested injunction is to preserve the *status quo* that exists between the parties.

f.   Plaintiff likely will prevail on the merits.

g.    Harm to plaintiff outweighs harm to any of the defendants.

h.    Granting the injunction advances the public interest.

In support of his motion, Chudnofsky relies on his Affidavit, and the Complaint.

Respectfully submitted,
CARL CHUDNOFSKY,
By his attorneys,
SASSOON & CYMROT LLP


Lewis A. Sassoon (B.B.O. No. 442600)
Gustavo A. del Puerto (B.B.O. No. 568056)
Anthony A.A. McGuinness (B.B.O. No. 661478)
84 State Street, Suite 820
Boston, MA  02109
617-720-0099

and

THE GORDON LAW FIRM LLP


Stephen F. Gordon (B.B.O. No. 203600)
101 Federal Street, 17th Floor
Boston, MA 02110-1844
617-261-0100
Email: sgordon@gordonfirm.com

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                               BUSINESS LITIGATION SESSION
                                               C.A. No. 10-3243 BLS

```
                                    )
CARL CHUDNOFSKY,                    )
          Plaintiff,                )
                                    )
     vs.                            )
                                    )
PRIME RETAIL, L.P.; LEE OUTLETS, LLC; )
PRIME OUTLETS ACQUISITION COMPANY,  )
LLC; PFP VENTURE, LLC; DAVID        )
LICHTENSTEIN; ROBERT A. BRVENIK; and )
PEYTON OWENS,                       )
          Defendants,               )
                                    )
     and                            )
                                    )
LEE OUTLETS, LLC; PRIME OUTLETS     )
ACQUISITION COMPANY, LLC; and PFP   )
VENTURE, LLC,                       )
          Reach-and-Apply Defendants. )
                                    )
```

## PLAINTIFF'S *EX PARTE* MOTION FOR REAL ESTATE ATTACHMENT
### (Mass. R. Civ. P. 4.1)

Plaintiff requests an attachment of the real estate in the County of Berkshire, standing in the name of the Defendant LEE OUTLETS, LLC, in the amount of $6,500,000.00.

As grounds, Plaintiff states that he:

(1)    Has a significant likelihood of success on the merits of the case.  The Defendants owe Plaintiff $2,110,973.30 in wages as non-discretionary employment contract earned bonuses as defined and calculated under their employment Agreement with Plaintiff for the categories of "Value Creation Bonus" and "NOI Bonus".

(2)    Knows of no insurance to answer for the debt in question.

1

And

(3)     Needs the attachment as adequate security for the judgment Plaintiff is likely to

receive.  Plaintiff knows of no other asset except for the realty owned by these various Defendants

that will be available to satisfy the judgment Plaintiff is likely to receive in this case.  Moreover, a

sale of the real estate that Plaintiff seeks to attach is imminent which will render these Defendants

without significant assets and consequently out of business.  The requested real estate attachment is

Plaintiff's only realistic opportunity to retain a meaningful chance of recovery from his expected

judgment.

Plaintiff submits his Affidavit in support of this Motion.

WHEREFORE, Plaintiff requests attachment of the real estate in the County of Berkshire,

standing in the name of the Defendant LEE OUTLETS, LLC, in the amount of $6,500,000.00.

CARL CHUDNOFSKY,
By his attorneys,
SASSOON & CYMROT LLP

_____
Lewis A. Sassoon (B.B.O. No. 442600)
Gustavo A. del Puerto (B.B.O. No. 568056)
Anthony A.A. McGuinness (B.B.O. No. 661478)
84 State Street, Suite 820
Boston, MA  02109
617-720-0099

and

THE GORDON LAW FIRM LLP

_____
Stephen F. Gordon (B.B.O. No. 203600)
101 Federal Street, 17th Floor
Boston, MA 02110-1844
617-261-0100
Email: sgordon@gordonfirm.com

2